IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HONG PHOY, | : | |
| | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JO ANNE B. BARNHART, | : | NO. 05-2791 |
| Commissioner of Social Security, | : | |
| | : | |
|     Defendant. | : | |

REPORT AND RECOMMENDATION

CHARLES B. SMITH
UNITED STATES MAGISTRATE JUDGE

Currently pending before the Court are cross-motions for summary judgment regarding plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles I and XVI, respectively, of the Social Security Act, 42 U.S.C. 401, et seq. For the reasons which follow, we recommend that the defendant's motion for summary judgment be granted and plaintiff's motion be denied.

I.    PROCEDURAL HISTORY

Plaintiff, Hong Phoy, filed her applications for DIB and SSI on October 14, 2003, alleging disability since September 1, 1995, due to back pain, abdominal pain, status post stomach surgery. (R. 41-43, 57, 66). The state agency denied plaintiff's applications on December 9, 2003. (R. 25-28). Following a request for review, Administrative Law Judge ("ALJ") Diane C. Moskal conducted a hearing on July 20, 2004, during which plaintiff and a vocational expert testified. (R. 25-38, 129-155). On September 13, 2004, after leaving the record open for the receipt of treatment records from plaintiff's treating physician and for consideration of plaintiff's request that the case be remanded to the state agency and/or a mental consultative examination be obtained, ALJ Moskal issued a decision finding

plaintiff not "disabled" for purposes of obtaining benefits. (R. 16-22).  The Appeals Council denied plaintiff's request for review on May 11, 2005, making the ALJ's decision the final decision of the Commissioner. (R. 8-10).

On July 8, 2005, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's decision.  Challenging the ALJ's finding, plaintiff now claims that the ALJ (1) violated her duty to develop the record; (2) rejected medical opinion evidence without adequate explanation; and (3) did not comply with applicable authority relating to residual functional capacity assessment.

II.    MEDICAL HISTORY

    A.    Vocational Profile

Plaintiff was born on February 2, 1952, making her fifty-two years old at the time of the ALJ's decision (a person closely approaching advanced age) and was forty-eight years old (a younger individual) on December 31, 2000, the date she last met the insured status requirements for DIB. (R. 24, 136).  She has a second grade education in Cambodia and speaks, but cannot read or write English. (R. 17, 56, 139).  Her past relevant work experience was as a punch press operator and housekeeper. (R. 140, 152).

    B.    Medical Evidence

Records Prior to Alleged Onset Date (September 1, 1995):

Records indicate that plaintiff treated with Phuong Ngoc Trinh, M.D. from April 14, 1994 through November 17, 1994 and complained of abdominal and pelvic pain. (R. 83-88).  An upper GI performed on July 7, 1994 revealed no evidence of gross gastric, duodenal or observed small bowel pathology and an x-ray of plaintiff's cervical spine performed that same date was normal. (R. 74-75). On August 2, 1994, an abdominal ultrasound revealed a "cystic structure noted in left adnexal region as on previous exams" and a CT of the lower abdomen and pelvis was recommended. (R. 76).  A report dated August 17, 1994 indicated that an EEG performed as a result of plaintiff complaining of

headaches and dizziness was within normal limits. (R. 77).

On August 18, 1994, Dr. Preston Kuptsow completed a Local 837 Health and Welfare & Pension Fund Attending Physician's Statement for Medical Disability Claims form, indicating that plaintiff reported to the hospital emergency room on May 5, 1994 and was diagnosed with a bilateral tubo ovarian abcess. (R. 78). He checked a box indicating that plaintiff was totally disabled and unable to perform her job because of surgery performed on May 11, 1994. Dr. Kuptsow indicated that plaintiff had a Laparotomy with bilateral salpingo oophorectomy and was continuously disabled beginning May 5, 1994, but leaving the end date blank. (R. 78). He did not complete the sections of the form asking whether it was a permanent disability or giving an estimate as to when it would end. (R. 79). Rather, Dr. Kuptsow stated that plaintiff was discharged from the gynecology service on August 26, 1994 "but still maintains a number of neurological complaints which must be evaluated and could cause continued disability." (R. 79).

Plaintiff began treatment with Thongchai Vorasingha, M.D. in May 1995, at which time she complained of pain in her abdomen after eating and was given an antibiotic. (R. 107-108). In June 1995, Dr. Vorasingha listed plaintiff's diagnosis as GERD (gastro esophegeal reflux disease). (R. 106).

<u>Records Post Alleged Onset Date (September 1, 1995)</u>:

Plaintiff did not return to Dr. Vorasingha again until March 28, 1997, at which time Dr. Vorasingha listed her diagnosis as H. Plyori and prescribed medication. (R. 106). Plaintiff then returned on May 14, 1997, complaining of abdominal pain pushing up to her stomach and pain in her chest and head. (R. 105).

In August 1997, plaintiff returned to Dr. Trinh, for the first time since November 1994, and he diagnosed a gastric ulcer. (R. 82). Plaintiff next returned to Dr. Visingha for a single visit on March 9, 1998, at which time she was prescribed Ibuprofin for pain, Zantac and Roboxian. (R. 105).

Plaintiff reported once again to Dr. Trinh in 1999, after almost two years since she had last seen

him. She did not return again to Dr. Vorasingha until October 2003, after an absence of more than five years, for two appointments and completion of a Welfare Employability Assessment Form. (R. 104-105, 110-111). Dr. Vosingha completed the form indicating that plaintiff was temporarily disabled from October 2003 until January 2004 due to "senility 51 y.o.", osteoarthritis, and migraines. (R. 112). He also noted that she needs more work up when assigned to his office. (R. 112).

On November 17, 2003, State Disability Doctor, Brad Rothkopf, M.D., completed a disability examination of plaintiff. (R. 92-94). Plaintiff was accompanied by a friend who was able to translate for her. (R. 92). Dr. Rothkopf noted that plaintiff was having burning pain in her pelvis which continued after her surgery and comes and goes, but bothers her much of the time. He further indicated that she has a history of low back pain since her surgery and trouble bending. She has been treated by "Dr. Thonchi" (presumably Thongchai Vorasingha, M.D.) for back strain and is unable to walk because of pain in her back, both legs and toes and feet. She complains of periodic dizziness, which Dr. Rothkopf indicated is very hard to characterize. (R. 92).

Upon physical examination he found plaintiff to be a pleasant, alert woman in no acute distress. He noted a grade 1/6 murmer at the aortic area and as to her abdomen indicated that it was benign but diffuse and mildly tender. She had full range of motion in fingers, wrists, elbows, shoulders and neck and strength was equal bilaterally and no evidence of muscle atrophy in the legs. (R. 94). As to mental status, Dr. Rothkopf stated that it was "really hard to assess although I would suspect it was normal." (R. 94). His impression was low back pain and pelvic pain, but he stated "It is really unclear to me what this lady suffers from as communication was clearly less than optimal. Information from her treating source (particularly the doctor named) including his office notes and hopefully results of studies would be extremely valuable in determining the nature and extent of this lady's injuries. Her examination was clinically quite benign." (R. 94).

On November 24, 2003 Sharon Wander, M.D. completed a Functional Capacity Assessment of

plaintiff . She opined that plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk about 6 hours in an 8 hour day, sit for about 6 hours in an 8 hour day and was unlimited as to pushing and pulling. (R. 96). She further indicated that plaintiff has no postural, manipulative, visual, communicative or environmental limitations. Dr. Wander explained that plaintiff maintains activities of daily living, including living alone, shopping, and preparing meals. (R. 100).

Plaintiff returned to Dr. Vorasingha for two visits in December 2003, at which time he noted that her diagnosis was GERD and prescribed a cream for itchy arms and legs. (R. 103-104). On March 2, 2004 Dr. Vorasingha completed a second Pennsylvania Department of Public Welfare Employability Assessment indicating that plaintiff was temporarily disabled beginning on that date and opined that her disability was expected to last until September 2, 2004, due to a primary diagnosis of "senility 51 y.o." and a secondary diagnosis of osteoarthritis and palpitation. (R. 110). He once again noted that she needed more work up when she is assigned to his office. Plaintiff indicated on the form that she believed she could not work because of "body sickness", her head always aches like migraines and dizziness, abdominal pain and she had surgery to remove uterus. (R. 109). Dr. Vorasingha finally saw plaintiff again on May 17, 2004, at which time she reported lower back pain, upset stomach after eating and dizziness but her BM was normal. (R. 103).

  C. <u>Administrative Hearing Testimony</u>

On July 20, 2004, a hearing was held before ALJ Diane Moskal. (R. 129-155). Before the testimony began ALJ Moskal agreed to keep the record open for 30 days after plaintiff's attorney indicated that due to confusion regarding plaintiff's current treating doctor, he had not requested records from Dr. Vorasingha. (R. 131-132). Plaintiff's attorney also requested that the matter be remanded to allow the state agency to develop a claim of a mental impairment which was not originally alleged. (R. 132-134).

Plaintiff, with the assistance of a Cambodian interpreter, then testified regarding her impairments

and their impact on her ability to function. (R. 136-152). She was born on February 2, 1952, making her 52 at the time of the hearing, weighs 120 pounds and did not know her height. (R. 136-137). She is right handed, does not use any canes or braces and does not have a driver's licence. (R. 137). Plaintiff testified that she has been in the United States since 1985, but is not yet a citizen. (R. 137). She has lived alone in a house, which she owns, for the past four years and receives public assistance. (R. 137-138). Plaintiff stated that her gas for cooking had recently been turned off and that her children no longer help her financially. (R. 139).

With regard to work history, plaintiff testified that she tried to go to school but could not because she gets dizzy when she walks. (R. 139). She worked doing housekeeping at the Sheraton in King of Prussia for two years and then worked as a fabric cutter, punching holes in aluminum, in New Jersey for eight years. (R. 139-140). According to plaintiff she returned to work after having surgery on her intestine, but after a second surgery was unable to return to work. (R. 140-141). Plaintiff explained that the second surgery was to remove her uterus because she had lifted something heavy at work. (R. 141). In response to the ALJ's comment that the record reflected that her ovaries had been removed and that many women return to work after these types of surgery, plaintiff testified that after the second surgery her husband left and she became depressed. (R. 141). When asked who treated her for depression, plaintiff testified that she saw a Chinese doctor in South Philadelphia who gave her medications. (R. 141-142). However, plaintiff's counsel indicated that her medications include Ativan, a pill for her stomach, Meclovan, Ibuprofen and a throat spray. (R. 142). Plaintiff testified that she was able to come to the hearing because a friend brought her. (R. 142). She stated that she sees Dr. Vorasingha once a month or sometimes once every two months and has not seen any other doctors in the past six months. (R. 142-143).

As to plaintiff's daily activities, she admitted that she does her own cooking, cleaning and shopping, but stated that she stands for only a short time and sometimes sits while cooking because her

legs shake and it looks like she is drunk. (R. 143). When asked if anyone has told her what is wrong with her legs, plaintiff testified that she has not gone for tests because she does not have anyone to bring her there and she did not know what type of tests were suggested. (R. 143-144). Plaintiff also testified that sometimes when she turns her heard everything around her seems out of shape. (R. 144). When the ALJ suggested that she follow up on tests, plaintiff stated that she is scared of getting another operation. (R. 144). When asked to describe her depression, plaintiff stated that she is worried about her general health and she is poor, does not have money for gas for cooking and her husband wants her to die sooner so he can get the house. (R. 144). She explained that she feels sad and the more she thinks about it she wants to hang herself. (R. 144). She admitted, however, that she has never told Dr. Vorasingha about this and explained that whatever she has told him he has only given her medication which has not really helped. (R. 145). When the ALJ asked how he could prescribe medication for depression if plaintiff did not tell him, she testified that she is afraid to tell him too much because he will send her for another exam and she would rather kill herself than have surgery. (R. 145). Plaintiff indicated that she is not legally divorced, but is separated and her husband has a girlfriend. (R. 145).

Upon questioning by plaintiff's counsel, she testified that since her last surgery she never feels happy and sometimes cries even while sleeping. (R. 146). She admitted that her dizziness does not happen regularly, but just sometimes when she is turning her head. Plaintiff stated that she engages in "coining", which was explained as a traditional treatment which involves rubbing a coin on the feet to remove poisons in the blood. (R. 146). When questioned by her attorney, plaintiff testified that she sleeps only about two hours and wakes up because she is sad and wants to die. (R. 147). In response to the ALJ's inquiry regarding why the family member who completed her Social Security forms indicated that she had no problems sleeping, plaintiff testified that she was afraid they would send her to a doctor and she does not want brain surgery. (R. 148).

Plaintiff testified that the reason she switched doctors was because she had to pay to see Dr. Trihn

and he refused to complete her forms for public assistance because he assumed she was healthy since she had not seen him for three years. (R. 148). She testified that she is using a medical assistance card to see Dr. Vorasingha. (R. 148-149). Upon re-examination by plaintiff's attorney, she testified that Dr. Trinh speaks Vietnamese and English and Dr. Vorasingha speaks Thai. (R. 149). She reported that she sometimes has a Cambodian interpreter to help her communicate with Dr. Vorasingha. (R. 149). Plaintiff testified that her sleep has been disrupted for the past three or four years and that she has lost weight, although she did not know how much, since she stopped working due to her difficulty sleeping and eating. (R. 150). She explained that since her last surgery she has pain and burning in her chest and eating turns her stomach and sometimes makes her go to the bathroom right away. (R. 151). Plaintiff indicated that she has episodes when she hears a loud noise, such as someone screaming outside, where her chest pounds and she feels shaky and dizzy. She explained that it could happen every day but only when there is some kind of stimulation or noise. (R. 151).

Following the completion of plaintiff's testimony, vocational expert ("VE") Dennis Mohn testified regarding plaintiff's work potential. (R. 152-154). First, he classified plaintiff's past job as a punch press operator as medium, low level semiskilled work. (R. 152). Thereafter, he testified in response to the ALJ's only scenario posed, that plaintiff's prior work would be consistent with the RFC assessed by Dr. Sharon Wander. (R. 152-153). He noted that for someone with no English skills, the job is learned through demonstration. (R. 153). Plaintiff's counsel did not have any questions for the VE.

III.   THE ALJ'S DECISION

On September 13, 2004, the ALJ issued a decision finding plaintiff not disabled for purposes of benefits. (R. 16-22). Under step one of the sequential analysis, the ALJ determined that plaintiff had not engaged in substantial gainful activity since her alleged onset date, resolving step one in her favor. (R. 17). She then concluded that plaintiff's back pain and abdominal pain post oophorectomy more than

8

minimally impact on her ability to perform work activity and are therefore "severe" impairments as defined by the Act, but that there is no objective documentation of a severe mental impairment. (R. 18-19). Nonetheless, the ALJ declined to find that plaintiff had any impairment which met or equaled the criteria of Listings 1.04 or when considered in combination satisfied the listing requirements. (R. 19).

Turning to an assessment of plaintiff's residual functional capacity, the ALJ first considered plaintiff's subjective complaints and found that due to its inconsistency with the objective evidence both from medical sources and her own family member as well as her own prior statements, her testimony could not be credited. (R. 20). Ultimately, she gave little weight to Dr. Vorasingha's findings of temporary disability as she concluded that they were not supported by his own treatment notes or the remainder of the record. (R. 20). Relying upon the testimony of the VE, the ALJ concluded that plaintiff could return to her past work as a punch press operator and as such, she deemed plaintiff not entitled to benefits. (R. 20-21).

IV.   STANDARD OF REVIEW

On judicial review of a final decision from the Commissioner of Social Security, a court must determine whether the Commissioner's ruling is supported by substantial evidence. 42 U.S.C. § 405(g); Burnett v. Commissioner of Social Security, 220 F.3d 112, 118 (3d Cir. 2000); see also Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (a reviewing court is "bound by the ALJ's findings of fact if they are supported by substantial evidence in the record."). "Substantial evidence" does not mean "a mere scintilla," but rather indicates such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971); Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact." Gilmore v. Barnhart, 356 F. Supp.2d 509, 511 (E.D. Pa. 2005) (quoting Schwartz v. Halter, 134 F. Supp.2d 640, 647

(E.D. Pa. 2001)).

V.     DISCUSSION

Plaintiff's allegations all concern the ALJ's residual functional capacity assessment and whether it is supported by substantial evidence of record.  "'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Hartranft v. Apfel, 181 F.3d 358, 359 n. 1 (3d Cir. 1999) (citing 20 C.F.R. § 404.1545(a)).  In making a residual functional capacity determination, the ALJ must consider all evidence before him.  Burnett v. Commissioner of Social Security, 220 F.3d 112, 121 (3d Cir. 2000).  "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence."  Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001). Plaintiff specifically argues that (1) the ALJ failed to properly develop the record; (2) that she improperly rejected medical opinion evidence without adequate explanation; and (3) that she did not comply with applicable authority regarding RFC assessment.  Plaintiff does not seek reversal, but rather seeks remand for de novo consideration including psychological or psychiatric examinations.  We will address these arguments in turn.

A.     ALJ's Duty to Develop the Record:

In general, Social Security Disability proceedings are "inquisitorial rather than adversarial" in nature, thus making it "the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."  Sims v. Apfel, 530 U.S. 103, 103-4, 120 S. Ct. 2080, 2081 (2000).  Courts have recognized that the ALJ's duty to develop the record is heightened when plaintiff lacks counsel: "[L]ack of counsel not only heightens the level of care with which the administrative law judge should organize the creation of the record, but also that with which a reviewing court should scrutinize it." Brittingham v. Weinberger, 408 F. Supp. 606, 611 (E.D. Pa. 1976) (citing Gold v. Secretary of Health, Education, and Welfare, 463 F.3d 38, 43 (2nd Cir. 1972)).  In general, however, "if there is insufficient

10

medical documentation or if the medical documentation is unclear, it is incumbent upon the Secretary to secure any additional evidence needed to make a sound determination." Ferguson v. Schweiker, 765 F.2d 31, 36-7 n.4 (3d Cir. 1985).  The Third Circuit has repeatedly held that the ALJ has an affirmative obligation to assist the claimant in developing facts. Plummer, 186 F.3d at 433-34; Taybron v. Harris, 667 F.2d 412, 414-15 (3d Cir.1981).   Thus, independent of the fact that plaintiff has the burden of proving disability, the ALJ has the duty to further develop the record on plaintiff's behalf by ordering further medical testing if the available medical documentation is insufficient or unclear.

In the case at bar, plaintiff was fully represented by counsel.  Thus, it is not apparent that the ALJ's duty to develop the record was heightened in that respect.  Plaintiff does, however, argue that psychiatric testing was needed to further support her argument of a mental impairment.  After examining the record and the hearing transcript, however, we find the ALJ fulfilled her duty to develop the record, thereby basing her decision upon substantial evidence.

Prior to the hearing, plaintiff had already been sent for a consultative examination to further develop the record due to her family member's reports that she had not had treatment for years. (R. 17). Notably, even at this evaluation, which was conducted in connection with the application for benefits, and where an interpreter was present, plaintiff still failed to even mention any depression or other mental impairment.  It was not until the hearing that plaintiff even alleged a mental impairment, at which time the ALJ entertained plaintiff's counsel's argument regarding a request for remand and elicited testimony regarding the alleged impairment.

Plaintiff testified that after her second surgery she became very sick mentally and physically because her husband left her and has a girlfriend. (R. 141).  When asked about treatment, plaintiff informed the ALJ that she saw a Chinese doctor in South Philadelphia who had prescribed medication, but after plaintiff's attorney went through her medications, as the ALJ indicated in her decision, there were none other than those prescribed by the doctors of record for arthritis, dizziness and her stomach.

(R. 142, 19). Although plaintiff testified that she has been depressed since her surgery and indicated that she has wanted to kill herself, she admitted that she has never told her doctors about depression. As the ALJ concluded, any complaints regarding plaintiff's mental impairments were not supported by the record and were entirely inconsistent with even plaintiff's own prior reports to the Agency. While plaintiff testified that she is unable to sleep more than two hours at a time and has experienced weight loss as a result of her inability to sleep and her physical problems, as the ALJ noted, the forms completed by a family member and submitted as part of her application indicated that she has no problems sleeping and no weight loss. An ALJ's determination as to credibility is entitled to "strong deference." Smith v. Commissioner of Social Security, 80 Fed. Appx. 268, 270 (3d Cir 2003) (unpublished), citing N.R.L.B. v. Permanent Label Corp., 657 F.2d 512, 518 (3d Cir. 1981). Here, the ALJ's reasoning for discrediting plaintiff's testimony was clear and certainly reasonable. She considered the records of plaintiff's treating physicians, the consultative examination performed by Dr. Rothkopf and the assessment of Dr. Wander, as well as plaintiff's own reports to examining and treating physicians, and the forms completed by plaintiff and her family members on her behalf. As noted by Dr. Wander and even according to plaintiff's own testimony, she maintains activities of daily living, including living alone, shopping, and preparing meals. (R. 100, 139). The ALJ also considered the fact that plaintiff returned to Dr. Vorasingha after significant lapses in treatment for the completion of forms for medical assistance and her own testimony that she switched doctors because Dr. Trihn refused to complete disability forms. (R. 18, 20).

Other than plaintiff's own allegations which were raised for the first time at the hearing, the only thing in the record to even suggest any mental impairment is her doctor's listed diagnosis on two forms completed for welfare indicating she was temporarily disabled as a result of "senility, 51 y.o.". As detailed below, the ALJ noted that there is nothing to support this finding in his own treatment notes or any where else in the record. The ALJ considered plaintiff's request for remand to obtain a consultative

mental evaluation both at the hearing and addressed it in her opinion. She noted that the most prominent diagnosis in Dr. Vorasingha's records "in very intermittent, routine visits, relates to GERD" and "[h]e does not diagnose ANY depression, anxiety, or cognitive issues." Furthermore, she noted that "no treating, or examining medical source has referred claimant to even routine outpatient, mental health treatment." (R. 19). Plaintiff had already been sent for a consultative exam and the record remained open to allow for submission of plaintiff's treating doctor's records, which were submitted and fully considered by the ALJ along with the remainder of the record. There is nothing in any of the reports to support a finding of a severe mental impairment or any functional limitations resulting from a mental impairment other than plaintiff's testimony, which was found not to be credible. Thus, there was no indication that the record was insufficient or unclear.

After considering the record as a whole, including plaintiff's testimony, the ALJ found no objective evidence of a severe mental impairment and denied the request for remand. Specifically, she indicated that "the request by claimant's attorney for either remand to SSA due to alleged mental impairment(s) or mental consultative examination is baseless, and in the nature of an after the fact "fishing expedition" given the benign treatment and examination records in evidence." Based on the record in this case, we agree that based on the information in the record, there was enough evidence to substantiate the ALJ's determination that no further evaluation was necessary. We find that the ALJ fulfilled her obligation to develop the record and was not required to remand for a consultative mental evaluation based on plaintiff's new allegations, which contradict even her own prior reports.

B. Whether the ALJ Improperly Rejected Medical Evidence:

Under applicable regulations and controlling case law, "opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight." Fargnoli v. Massanari, 247 F.3d at 43 (citing 20 C.F.R. § 404.1527 (d)(2)). Such deference is accorded to treating physicians, especially "when their opinions reflect expert judgment based on a continuing observation of the

patient's condition over a prolonged period of time." Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987) (quoting Podedworny v. Harris, 745 F.2d 210, 217 (3d Cir. 1984); 20 C.F.R. § 404.1527 (d). Moreover, where the treating physician is a specialist his opinion is entitled to even greater deference. See Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993); 20 C.F.R. § 404.1527 (d)(5). A treating doctor's opinion on the issue of the nature and severity of a claimant's impairment will be given controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527 (d).

An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. Plummer, 186 F.3d at 429. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may not reject a treating physician's opinion due to his or her own credibility judgments, speculation or lay opinion. Morales v. Apfel, 225 F.3d at 317-318 (quoting Plummer, 186 F.3d at 429). Where an ALJ elects to disregard a treating physician's opinion, he must explicate on the record his reasons for doing so. Brewster v. Heckler, 786 F.2d 581, 584 (3d Cir. 1986).

Faced with conflicting reports between a treating and a consulting physician, an ALJ should defer to the findings of the treating physician rather than to a physician who has examined the claimant as a consultant. Mason, 994 F.2d at 1067. This principle does not dictate that the opinion of the treating physician as to whether the claimant is disabled be dispositive of the issue. Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994). Rather, the ALJ must weigh the relative worth of a treating physician's report against the examining physician's report, keeping in mind that the opinion of the treating physician is usually entitled to deference. Id. "The opinions of non-examining treating physicians may override a treating source's opinions provided that the former are supported by evidence in the record." Alexander

v. Shalala, 927 F. Supp. 785, 795 (D.N.J. 1995), aff'd, 85 F.3d 611 (3d Cir. 1996) (citing Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993)).

In the case at bar, plaintiff argues that the ALJ improperly rejected Dr. Vorasingha's conclusion on two forms completed for the Pennsylvania Department of Welfare that plaintiff was temporarily disabled with a primary diagnosis of "senility 51 y.o.". As plaintiff recognizes in her brief, pursuant to 20 C.F.R. § 404.1527(d) and SSR 96-2p, conclusions of a treating physician as to the ultimate issue of disability are not controlling because they are on an issue reserved for the Commissioner. In this case, even Dr. Vorasingha did not render an opinion that plaintiff was disabled within the meaning of the Act. Rather, on the forms at issue, he opined that she was temporarily disabled. Plaintiff argues that although this conclusion is not entitled to controlling weight, Dr. Vorasingha's diagnosis of senility listed on the forms may have been or at least should not have been rejected. However, as noted by the Commissioner, the ALJ did not reject Dr. Vorasingha's opinion, but rather gave it "little weight" as it was not supported by his notes or the record.

The ALJ fully considered Dr. Vorasingha's treatment records as well as these two checklist forms and in accordance with the regulations considered factors such as the length of treatment, nature of the treating relationship, frequency of examination, consistency with the record and supportability to determine the weight to be given to his opinions. See 20 C.F.R. §§ 416.927(d)(1)-(6). However, as the ALJ noted in her decision, senility was not even mentioned anywhere in the record other than on this form. There is absolutely nothing even within Dr. Vorasingha's own treatment notes to support this diagnosis. Furthermore, Dr. Vorasingha offered no written explanation on this one page form, listed no specific impairments, and his records do not contain any mention of senility or even related complaints. In fact, the only thing written on the two forms other than the diagnosis is that plaintiff needs more work up when assigned to his office. (R. 110, 112). More than five years had passed since Dr. Vorasingha had seen plaintiff when he completed this form in October 2003. The ALJ specifically noted the various

voids in his treatment, even during the period of alleged onset, as follows:

> "Dr. Vorasingha's trreatment records have a void from June 6, 1995, when claimant was diagnosed with gastric esophageal reflux disorder (GERD) until March 28, 1997 – albeit that claimant asserts disability starting September 1, 1995. Claimant was seen for two visits in 1997, complaining of abdominal pain; then she did not see Dr. Vorasingha for almost a year between May 14, 1997 and March 9, 1998. After that visit, there are no treatment notes for five and a half years, until October 28, 2003, when claimant appeared with her form to certify her for medical assistance, and was authorized only a three month period of 'disability' by Dr. Vorasingha. Treatment dated December 23, 2003 repeats the diagnosis of GERD anmd astated that claimant should have more testing related to reported bowel symptoms of sometimes diarrhea/sometimes constipation. Next exam was on March 2, 2004, related to claimant's needs to have another welfare medical assistance form complerted. Final visit by Dr. Vorasingha is dated May 17, 2004..."  (R. 18).

Given the lapse in time between examinations prior to completing the forms, his own statement that more work up was necessary, and the lack of any supporting notes in his records, it appears that this single word diagnosis was based upon nothing more than plaintiff's subjective statements.

Plaintiff argues that even if Dr. Vorasingha's opinion was not entitled to controlling weight, the ALJ was required to discuss her treatment of the opinion. Upon review of the decision, it is clear that the ALJ in this case clearly explained why she did not impose any limitations based upon this lone reference to a diagnosis of senility on these forms. There is nothing in the record, including the form completed by Dr. Vorasingha which specifies any functional limitations from senility or that indicates that plaintiff has any severe mental impairment. We therefore do not find that the ALJ erred when considering the medical evidence of record, including the notes and opinions of Dr. Vorasingha.

C.      Applicable Authority Relating to RFC:

Finally, plaintiff argues that the ALJ failed to comply with Social Security Ruling 96-8p when assessing plaintiff's RFC. Specifically, she argues that the RFC assessment is flawed because the ALJ failed to explain why no non-exertional limitations were included, noting that there is evidence of non-exertional impairments other than the alleged mental impairment including dizziness and headaches. After reviewing the record and the ALJ's decision, we also find no error in this regard.

As to plaintiff's alleged headaches, on one of the two forms on which Dr. Vorasingha indicated a primary diagnosis of senility he included a secondary diagnosis of migraines[1]. However, once again, no limitations have been imposed by any doctor as a result of headaches or dizziness. During the consultative examination, plaintiff did not even report headaches. Although the record includes plaintiff's reports of periodic dizziness, by plaintiff's own admission, her dizziness is not a limitation which regularly causes her any problems. During the hearing plaintiff specifically testified that the dizziness was not something that occurred regularly, but only "sometimes" when she turns her head she gets dizzy. (R. 146). While the record does include references to the fact that plaintiff has at least reported headaches and dizziness and plaintiff has been prescribed medications, the record does not support a finding of any resulting limitations. We therefore find that the ALJ was completely justified in failing to include these or any other any non-exertional limitations in plaintiff's RFC.

Upon review of the record in its entirety and the ALJ's opinion, we find the opinion to be supported by substantial evidence and find no reason for remand as requested by plaintiff.

Therefore, I make the following:

RECOMMENDATION

AND NOW, this        day of *December*, 2005, IT IS RESPECTFULLY RECOMMENDED that Defendant's Motion for Summary Judgment be GRANTED and Plaintiff's Motion be DENIED.

CHARLES B. SMITH
UNITED STATES MAGISTRATE JUDGE

---

[1] Notably, on the other form Dr. Vorasingha listed a secondary diagnosis of osteoarthritis and palpitation, which diagnoses are also not documented in the records. (R. 110).